UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PIER 32 MARINA GROUP, LLC, dba PIER 32 MARINA,<br><br>Plaintiff,<br><br>v.<br><br>M/V OCEAN EYES, aka M/V REEL DEAL, U.S. Coast Guard No. 1020245, a 1993 Bluewater Yacht Builders, Mikelson 64 Motor Vessel of Approximately 67.7-Feet in Length Overall, and 17.3-Feet in Beam, AND ALL OF HER ENGINES, TACKLE, ACCESSORIES, EQUIPMENT, FURNISHINGS, 12-FOOT CARIBE DINGHY (HIN No. D2103K708) AND ALL OTHER APPURTENANCES, in rem,<br><br>Defendant. | Case No.:  25-CV-2635-GPC-JLB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR INTERLOCUTORY VESSEL SALE AND AUTHORIZING CREDIT BID**<br><br>**[Dkt. No. 16.]** |

Before the Court is the motion of Plaintiff PIER 32 MARINA GROUP, LLC, dba PIER 32 MARINA for interlocutory vessel sale and authorization to credit bid. (Dkt. No. 16.)  No opposition has been filed.  Based on the reasoning below, the Court GRANTS Plaintiff's motion.

1

25-CV-2635-GPC-JLB

**Procedural Background**

On October 3, 2025, Plaintiff PIER 32 MARINA GROUP, LLC, dba PIER 32 MARINA ("Plaintiff") filed a Verified Complaint against Defendant M/V OCEAN EYES, aka M/V REEL DEAL, U.S. Coast Guard No. 1020245, a 1993 Bluewater Yacht Builders, Mikelson 64 Motor Vessel of Approximately 67.7-Feet in Length Overall, and 17.3-Feet in Beam ("Vessel"), and all of her engines, tackle, accessories, equipment, furnishings, dinghy, and appurtenances, *in rem* for vessel arrest, interlocutory sale, and money damages for breach of maritime contract for necessaries, trespass by vessel, and *quantum meruit*. (Dkt. No. 1, Compl.)  On October 7, 2025, the Court issued an order authorizing the arrest of the Vessel and appointing Plaintiff as Substitute Custodian of the Vessel.  (Dkt. Nos. 5, 6.)  Pursuant to Plaintiff's request for entry of clerk's default, default was entered against the Vessel on January 6, 2026.  (Dkt. No. 14.)

On March 10, 2026, Plaintiff filed the instant motion for interlocutory vessel sale and authorization to credit bid.  (Dkt. No. 16.)  No opposition has been filed.

**Factual Background**

Plaintiff operates a marina located at 3201 Marina Way, National City, California. (Dkt. No. 1, Compl. ¶ 2.)  Defendant is a 1993 Bluewater Yacht Builders, Mikelson 64 motor vessel of approximately 67.7-feet in length overall and 17.3-feet in beam, documented with the United States Coast Guard under Official No. 1020245.  (*Id.* ¶ 3.) The Abstract of Title for the Vessel reflects that SRD Excavation Corp. owns the Vessel, and Seth Dixon ("Dixon") identified himself as the owner and Chief Executive Officer of SRD Excavation Corp.  (*Id.* ¶ 6.)  On or about July 31, 2024, Dixon executed a Maritime Contract for Private Wharfage ("Wharfage Contract").  (*Id.*; *id.*, Ex. A.)

Paragraph 7 of the Wharfage Contract provides "[p]ayment of all fees and charges are due on the FIRST (1st) day of each month, with or without a billing statement."  (*Id.* ¶ 7; *id.*, Ex. A ¶ 7.)  Due to a failure to pay sums required pursuant to the Wharfage Contract, on August 9, 2025, Plaintiff sent Mr. Dixon a "THREE DAY NOTICE TO COMPLY WITH WHARFAGE AGREEMENT OR QUIT," demanding payment within

25-CV-2635-GPC-JLB

three days of unpaid fees due under the Wharfage Contract.  (*Id.* ¶ 8.)  Paragraph 9 of the Wharfage Contract provides that either party may terminate the contract "by giving thirty (30) days written notice of termination to the other."  (*Id.* ¶ 9; *id.*, Ex. A ¶ 9.)  On August 16, 2025, Plaintiff sent Mr. Dixon a letter informing him of Plaintiff's election to terminate the Wharfage Contract, effective September 14, 2025, and reminding him that if the Vessel was not removed from the marina by the termination date, wharfage fees would accrue at the then-current guest vessel rate.  (*Id.* ¶ 10.)

Paragraph 38 of the Wharfage Contract provides that following termination, the Vessel "will be regarded as a trespasser" and wharfage rates "will be calculated at the then current guest vessel rate."  (*Id.* ¶ 11.)  The standard guest vessel rate at Plaintiff's marina is $6.00 per foot of vessel length per day.  (*Id.* ¶ 12.)  Despite termination of the Wharfage Contract, the Vessel was not removed from Plaintiff's premises and remained there without contractual or other legal justification.  (*Id.* ¶ 20.)  Calculated through September 30, 2025, the account for the Vessel was in arrears in an amount not less than $16,239.06, with arrearages continuing to accrue thereafter at the applicable guest vessel rate.  (*Id.* ¶ 13.)  Plaintiff alleges that notwithstanding repeated demands for payment, the Vessel and her owner failed to bring the account current and failed to satisfy Plaintiff's maritime necessaries lien.  (*Id.* ¶ 16.)

## Discussion

Federal courts exercise admiralty jurisdiction under the Constitution and statute. U.S. Const. art. III, § 2, cl. 1; 28 U.S.C. § 1333(1).  A "contract for wharfage is a maritime contract", *Ex Parte Easton*, 95 U.S. 68, 75 (1877), and within the Court's admiralty jurisdiction under 28 U.S.C. § 1331 "if wharfage is provided to a specific vessel." *Royal Ins. Co. of America v. Pier 39 Ltd. P'ship*, 738 F.2d 1035, 1037 (9th Cir. 1984) (citing *Ex Parte Easton*, 95 U.S. 68 (1877)).  A maritime lien on the vessel is established in favor of those who provide necessaries for the benefit of a vessel.  46 U.S.C. § 31342(a) ("a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner - (1) has a maritime lien on the vessel; and (2) may

3

bring a civil action in rem to enforce the lien"). In this case, Plaintiff has filed the instant action, *in rem*, seeking foreclosure on its maritime lien arising under the Wharfage Contract through the interlocutory sale of the Vessel.

**A.      Interlocutory Sale of Vessel**

"The interlocutory sale of a vessel is not a deprivation of property but rather a necessary substitution of the proceeds of the sale, with all of the constitutional safeguards necessitated by the *in rem* process." *Ferrous Fin. Servs. Co. v. O/S Arctic Producer*, 567 F. Supp. 400, 401 (W.D. Wash. 1983).

Rule E(9)(a)[1] of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Claims ("Supplemental Admiralty Rules") governs interlocutory vessel sales and provides,

> (i) On application of a party, the marshal, or other person having custody of the property, the court may order all or part of the property sold—with the sales proceeds, or as much of them as will satisfy the judgment, paid into court to await further orders of the court—if:
>
> (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;
>
> (B) the expense of keeping the property is excessive or disproportionate; or
>
> (C) there is an unreasonable delay in securing release of the property.

Fed. R. Civ. P., Suppl. Adm. R. E(9)(a)(i). "To justify an interlocutory sale, Plaintiff need only establish the existence of one of the three provisions listed in Rule E(9)(a)(i)." *Rainaldi Family Trust Dated February 26, 2004 v. M/Y Excalibur, U.S.C.G. Official No. 1057893*, Case No. SACV 19-00684 AG (JDEx), 2019 WL 6794218, at *2 (C.D. Cal. Aug. 6, 2019) (citation omitted); *Merchants Nat'l Bank of Mobile v. Dredge Gen. G.L.*

---

[1] In its motion, Plaintiff is referencing the former Rule (E)(9)(b) of the Federal Rule of Civil Procedure, Supplemental Rules for Certain Admiralty and Maritime Claims. (Dkt. No. 16-1)

25-CV-2635-GPC-JLB

*Gillespie*, 663 F.2d 1338, 1341 (5th Cir. 1981) ("In order to prevail, the lienors need only show one of the three criteria.").

Plaintiff argues that all three conditions have been met.  First, Plaintiff asserts that the Vessel is deteriorating in condition and value by reason of her idleness while in custody.  (Dkt. No. 16-1 at 15-16.[2])  Plaintiff presents the declaration of Ray Jones ("Jones"), who has been a licensed yacht broker for approximately 43 years, during which time he served as President of Long Beach Yacht Sales, Inc., has been a long-time member of various trade organizations, and has sold thousands of vessels.  (Dkt. No. 16-2, Jones Decl. ¶ 1.)  Jones further states that he has offered expert opinions regarding the condition and fair market value of arrested vessels in dozens of cases.  (*Id*. ¶ 2.)  Jones opines that it is "commonly understood among experienced vessel owners, yacht brokers and others who routinely deal with boats that even well and regularly maintained vessels inevitably deteriorate in condition and value over time."  (*Id*. ¶ 3.)  According to Jones, such deterioration is "exacerbated" when vessels sit for extended periods in a salt-water environment without regular, routine maintenance.  (*Id*.)  Jones further explains that while an arrested vessel sits idle, "her equipment, systems, generators and engines are not operated under load (if at all)," and that such disuse can detrimentally impact the vessel's condition and value.  (*Id*.)  In Jones's professional opinion, it is "unavoidable" that the Vessel will deteriorate in condition and value while sitting idle in salt water, and that "the longer she remains under arrest the greater the deterioration will be."  (*Id*. ¶ 4.)  Jones further opines that, in the interest of preserving the Vessel's value, she should be sold "as soon as possible" because every day the Vessel remains unused "results in a diminution in her condition, and accordingly her value."  (*Id*.)

Because the Court, previously, based on similar declarations by Jones, found that the plaintiffs had shown the deterioration criteria under Supplemental Admiralty Rule

---

[2] Page numbers are based on the CM/ECF pagination.

25-CV-2635-GPC-JLB

E(9)(a)(i)(A), it also finds that Plaintiffs has shown that the Vessel is deteriorating in condition and value as it sits idle. *See Bartell Hotels v. S/L Talus,* 445 F. Supp. 3d 983, 988 (S.D. Cal. 2020); *Shelter Cover Marine, Ltd. v. M/Y Isabella*, Case No. 17cv1578-GPC-BLM, 2017 WL 5906673, at *2 (S.D. Cal. Nov. 30, 2017) (finding deterioration to vessel if it remains arrested based on Jones' analysis); *see also Tindini P/L v. Bruce*, Case No.18-cv-04639-EDL, 2019 WL 1095824, at *2 (N.D. Cal. Jan. 15, 2019), *report and recommendation adopted by* 2019 WL 1095798 (N.D. Cal. Feb. 6, 2019) (accepting a similar declaration from Jones as evidence sufficient to establish deterioration criteria under Rule E(9)).

Next, Plaintiff argues that the cost of keeping the Vessel in custody is excessive and disproportionate where no payments are being made to creditors, the Vessel is idle, and custodial costs continue to accrue. (Dkt. No. 16-1 at 17-18.) Jones reviewed dozens of detailed photographs of the interior and exterior of the Vessel and concluded that the Vessel's fair market value is about $150,000. (Dkt. No. 16-2, Jones Decl. ¶ 5.) The Substitute Custodian Order authorizes ongoing wharfage charges of $234.50 per day and custodial services charges of $67.00 per day. (Dkt. No. 6, Order Appointing Substitute Custodian ¶¶ 4(b)&(c).) Accordingly, custodial expenses have been accruing at a combined rate of $301.50 per day for 191 days, from the day the Vessel was arrested on November 26, 2025, (Dkt. No. 9), until the date of the hearing on June 5, 2026, for a total of $57,586.50. Further, the Substitute Custodian Order provides that the Substitute Custodian must inspect the interior of the Vessel, twice monthly, at a rate of $50.00 per inspection for watertight integrity, excessive bilge water, fuel leaks and other problems. (Dkt. No. 6, Order Appointing Substitute Custodian ¶ 4(d).) The Substitute Custodian will have inspected the interior of the Vessel a total of 13 times between November 26, 2025, the date she was arrested, and the hearing date of June 5, 2026 for a total of $650.00. Therefore, the total amount of fees is $58,236.50 which amounts to 38.8% of the Vessel's presumed fair market value and have been found to be excessive and disproportionate within the meaning of Rule E(9)(B). *See Shelter Cove*, 2017 WL

6

5906673, at *3 (finding that maintenance costs amounting to 30 percent of the vessel's total value were excessive and disproportionate); *GB Cap. Holdings, LLC v. S/V Glori B,* No. 18CV312-WQH-AGS, 2019 WL 277387 (S.D. Cal. Jan. 22, 2019) (concluding costs of $2,430 per month excessive and disproportionate to the vessel's $6,000 fair market value).  Thus, the Court concludes that Plaintiff has shown that the "expense of keeping the property is excessive or disproportionate."

Finally, Plaintiff contends that no security has been posted, and no offer has been made to post security for over six months since the Vessel's arrest.  (Dkt. No. 16-1 at 16-17.)  "As a general rule, defendants are given at least four months to bond a vessel absent some other considerations." *Vineyard Bank v. M/Y Elizabeth I*, No. 08cv2044 BTM (WMC), 2009 WL 799304, at *2 (S.D. Cal. Mar. 23, 2009) (quoting *Bank of Rio Vista v. Vessel Captain Pete,* No. C 04–2736CW, 2004 WL 2330704, at *2 (N.D. Cal. Oct. 14, 2004)); *see also California Yacht Marina—Chula Vista*, No. 14–cv–01215–BAS(BGS), 2015 WL 1197540, at *4 (S.D. Cal. Mar. 16, 2015) (nine-month delay was unreasonable); *Ferrous Fin. Servs. Co.*, 567 F. Supp. at 401 (no attempt to secure release of vessel within four months since arrest was unreasonable delay); *Merchants Nat'l Bank of Mobile*, 663 F.2d at 1341-42 (failure to secure the release of the vessel eight months after arrest constitutes unreasonable delay).

Here, the Vessel was arrested on November 2, 2025, more than six months ago.  (Dkt. No. 9.)  Default was entered against the Vessel and no person claiming interest has come forward to secure the Vessel's release.  Therefore, there has been an unreasonable delay in securing the release of the Vessel.

Because Plaintiff has demonstrated that all three factors of Rule (E)(9)(a)(i) have been met, the Court GRANTS Plaintiff's motion for interlocutory vessel sale.

**B.    Authorization to Credit Bid**

Plaintiff also asks the Court to authorize it to credit bid at the auction because no party has asserted any maritime lien against the Vessel and as a result, it is the senior lienholder.  (Dkt. No. 16-1 at 24-25.)  Under the Local Civil Rules,

25-CV-2635-GPC-JLB

> When the court determines on the merits that a plaintiff or plaintiff in intervention has a valid claim senior in priority to all other parties, that plaintiff in intervention foreclosing a properly recorded and endorsed preferred mortgage on, or other valid security interest in the vessel may bid, without payment of cash, certified check or cashier's check, up to the total amount of the secured indebtedness as established by affidavit filed and served on all other parties no later than seven (7) days prior to the date of sale.

Civil Local Rule E.1 (e)(2). In this case, no party has asserted any maritime lien claim against the Vessel and Plaintiff is the only maritime lien claimant. Plaintiff requests the Court to authorize a credit bid at the auction up to the lien amount attested to under oath in the Verified Complaint ($16,239.06) and which will be established by affidavit pursuant to Civil Local Rule E.1(e)(2), plus its actual and demonstrable costs of suit, including U.S. Marshal, substitute custodian and other *custodia legis* expenses, to be calculated through the date of the vessel sale at the rates provided by this Court's Order Appointing Substitute Custodian. (Dkt. No. 6.) The Court finds it is appropriate to GRANT Plaintiff's request to credit bid at the auction of the Vessel.

C.    **Marketing Vessel Prior to Auction**

Plaintiff also requests authorization to conduct additional marketing and advertising of the Vessel in advance of the United States Marshal auction. (Dkt. No. 16-1 at 21-24.) Plaintiff anticipates that its maritime lien claim and *custodia legis* expenses will total approximately $60,000 to $65,000, while the estimated fair market value of the Vessel is approximately $150,000. (Dkt. No. 16-1 at 21-22.) Plaintiff contends that enhanced marketing efforts would increase exposure to prospective purchasers, maximize competitive bidding, and reduce the likelihood of post-sale disputes concerning the adequacy of the purchase price. (*Id*.) Plaintiff further contends that additional advertising would "greatly enhance" public exposure to the Vessel and likely increase buyer interest and the ultimate sale price at auction. (*Id*. at 22.)

Plaintiff proposes engaging Jones to develop and implement a coordinated marketing campaign for the Vessel. (*Id*.) The proposed advertising efforts include

25-CV-2635-GPC-JLB

publication in boating and yachting publications, online advertising, circulation through marine industry media sources, obtaining a marine survey report for prospective buyers, and conducting open houses to permit inspection of the Vessel.  (*Id*.)  Plaintiff further represents that Jones would charge $3,000, plus five percent of the selling price for his services, and that the marine surveyor would charge approximately $1,675 to $2,010 for preparation of a survey report.  (*Id*. at 23.)

Courts have recognized that supplemental advertising and marketing expenses incurred in connection with judicial vessel sales may properly be treated as *custodia legis* expenses payable from the sale proceeds.  Recently, in *Centennial Bank v. M/Y Marluv*, the Central District of California authorized pre-sale marketing of an arrested vessel by a third-party liquidator for compensation specified in the plaintiff's motion.  808 F. Supp. 3d 1080, 1087-88 (C.D. Cal. 2025).  There, the plaintiff sought authorization for the third-party liquidator to market the vessel before the U.S. Marshal auction "for a fee of 8% of the gross sales price."  *Id*. at 1087.  The court reasoned that Supplemental Admiralty Rule E(9)(a)(i), together with the court's equitable admiralty powers and the Civil Local Rule E.1(e), minimum notice requirements, permitted additional marketing designed to maximize the vessel's sale price.  *Id*.  The court further ordered that the sale shall occur 40 days after the entry of the court's order "to facilitate the marketing" of the vessel by the third-party.  *Id*. at 1087-88; *see Am. W. Bank v. P/V Indian,* No. 12cv1786 AJB (BGS), 2013 WL 784756, at *4 (S.D. Cal. Mar. 1, 2013) (granting plaintiff's request to allow a third-party to market the vessel for a period of 45-60 days).

Likewise, in *E.N. Bisso & Son, Inc. v. M/V Bouchard Girls*, the court authorized additional advertising beyond the required public notice and provided that the plaintiff "may effect such other advertising covering a more extensive area as can be reasonably secured at a reasonable cost," and that "[t]he expenses of such additional advertisement shall be taxed as *custodia legis* expenses."  482 F. Supp. 3d 527, 534 (E.D. La. 2020).  The Supreme Court has similarly explained that services furnished "for the common benefit of those interested in a fund administered by the court" may properly be paid

9

from the fund as an "expense of justice." *New York Dock Co. v. The Poznan*, 274 U.S. 117, 121 (1927).

The Court concludes that Plaintiff's request for supplemental advertising and marketing is appropriate under the circumstances and consistent with the Court's authority under Supplemental Admiralty Rule E(9)(a)(i) and its equitable admiralty powers. Accordingly, the Court GRANTS Plaintiff's request to conduct commercially reasonable additional advertising and marketing of the Vessel prior to the U.S. Marshal auction. The Court further authorizes reasonable associated advertising and marketing expenses to be treated as *custodia legis* expenses payable from the sale proceeds.

## Conclusion

Accordingly, considering the Motion of Plaintiff for an Order directing the interlocutory sale of the Vessel, the Memorandum of Points and Authorities, the Declaration of Jones, the file of record in this action, and good cause appearing therefor, and having concluded that the interlocutory sale of the Vessel is warranted pursuant to Supplemental Admiralty Rule E(9)(a)(i) because she is subject to deterioration while in custody, because the expense of keeping her is excessive or disproportionate, and because there has been an unreasonable delay in securing her release,

**IT IS HEREBY ORDERED** that, consistent with Supplemental Admiralty Rule E(9)(b) and Civil Local Rule E.1(e), the United States Marshal is hereby directed and empowered to sell said Vessel and her engines, tackle, accessories, equipment, furnishings and appurtenances, as is, where is, at public sale at the first available time and date, after having first caused notice of said sale to be published daily in a newspaper of general circulation within the City of San Diego, California for at least seven days immediately before the date of sale; and

**IT IS FURTHER ORDERED** that such public notice shall specify the date, time and location for the sale of the Vessel; and

**IT IS FURTHER ORDERED** that prior to the U.S. Marshal auction of the Vessel, Plaintiff may engage the services of Ray Jones, for the compensation specified above, to

advertise the auction in the manner specified therein, for a period of 60 days following issuance of this Order, for the compensation specified (including hiring a professional marine surveyor to inspect the Vessel and provide a condition report), and that Plaintiff may recover such costs as *custodial legis* expenses; and

**IT IS FURTHER ORDERED** that, consistent with Civil Local Rule E.1(e)(2), such public notice specify that the last and highest bidder at the sale will be required to deposit with the U.S. Marshal a certified check or a cashier's check in the amount of the full purchase price not to exceed $500, and otherwise $500 or ten percent (10%) of the bid, whichever is greater, and that the balance, if any, of the purchase price shall be paid by certified check or cashier's check before confirmation of the sale or within three days of dismissal of any opposition which may have been filed, exclusive of Saturdays, Sundays and legal holidays; and

**IT IS FURTHER ORDERED** that any proceeds of said sale shall be held by the United States Marshal or deposited by the United States Marshal in the Registry of this Court, pending further order of this Court; and

**IT IS FURTHER ORDERED** that Plaintiff, having a secured maritime lien interest in the Vessel pursuant to the Commercial Instruments and Federal Maritime Lien Act (46 U.S.C. §§ 31301-31343) and being the only claimant in this action asserting a maritime claim against her, is authorized pursuant to Civil Local Rule E.1(e)(2) to credit bid at the auction of the Vessel, without payment of cash, a sum equal to its secured interest in the Vessel, consisting of the lien amount specified in Plaintiff's Verified Complaint ($16,239.06), plus its actual costs of suit through the date of the sale, including U.S. Marshal and other *custodia legis* expenses, with such costs and expenses to be calculated at the rates specified and authorized in the Order Appointing Substitute Custodian and Authorizing Movement of Vessel. However, as Plaintiff's maritime necessaries lien interest in the Vessel does not, as a matter of law, include attorneys' fees, such fees are not to be included in any credit bid Plaintiff makes; and

25-CV-2635-GPC-JLB

**IT IS FURTHER ORDERED** that should Plaintiff elect to credit bid, it shall file and serve any appearing parties with its Notice of Intent to Credit Bid no later than seven (7) days prior to the date of the sale of the Vessel, as required by Civil Local Rule E.1(e)(2); and

**IT IS FURTHER ORDERED**, pursuant to Civil Local Rule E.1(e)(2), that if within three days of the auction date, exclusive of Saturdays, Sundays, and legal holidays, no written objection is filed, the sale shall stand confirmed as of course, without the necessity of any affirmative action thereon by a judge, except that no sale shall stand confirmed until the buyer has complied fully with the terms of the purchase; and

**IT IS FURTHER ORDERED**, that if no objection to the sale of the Vessel is filed within three days of the auction date, exclusive of Saturdays, Sundays and legal holidays, the U.S. Marshal shall forthwith issue to the high and successful bidder Bills of Sale for the Vessel, and for her dinghy, bearing Hull Identification Number D2103K708.

The hearing currently set for June 5, 2026 is **VACATED**.

IT IS SO ORDERED.

Dated:  June 2, 2026

Hon. Gonzalo P. Curiel
United States District Judge

25-CV-2635-GPC-JLB